# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Sarah A. Mullin and | ) | |
| Charles R. Mullin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **C.A. No.: N18C-11-078 FJJ** |
| v. | ) | |
| | ) | |
| Bruce M. Ascetta and | ) | |
| Carla S.M. Ascetta, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: July 7, 2021
Decided: September 20, 2021

## MEMORANDUM OPINION FOLLOWING TRIAL

*Donald L Gouge, Jr., Esquire,* Donald L. Gouge, Jr., LLC, Wilmington, Delaware, *Attorneys for Plaintiff.*

*Steven Schwartz, Esquire,* Schwartz & Schwartz, P.A., Wilmington, Delaware, *Attorneys for Defendant*

**Jones, J.**

A bench trial in the above matter was held on April 5-8, 2021. During the trial 15 witnesses were called and numerous exhibits were offered. The record was supplemented in June with an additional trial deposition. The parties submitted post trial memorandum. The record is now complete. This is the Court's decision following trial. The Court finds the following by a preponderance of the evidence.

This case arises out of a sale of a home located at 1059 Windrow Way, Magnolia, Delaware (the "property"). In November 2012 the Defendants in this case, Bruce M. Ascetta and Carla Ascetta (the "Ascettas" or "Sellers"), entered into an Agreement of Sale with K. Hovnanian ("K. Hov") in which K. Hov agreed to build the Ascettas a home located at the property. The purchase price was $248,575. The contract between the Ascettas and K. Hov provided that the Ascettas were to receive K.Hov's standard Home Builder's Limited Warranty. The Ascettas closed on the house with K. Hov on April 16, 2013.

On November 14, 2017, the Ascettas entered a contract to sell the home to the Plaintiffs, Sarah A. Mullin and Charles R. Mullin (the "Mullins" or "Buyers.") The contract between the parties provided that the Seller's Disclosure of Real Property Condition Report (hereinafter referred to as "SD") was an Addendum. The SD itself on its first page recited: "This report, signed by the Buyer and Seller, shall become a part of the Agreement of Sale." The parties went to settlement on December 15, 2017. More than a year later the Home Builder's Limited Warranty was transferred to the Mullins.

2

The legal crux of this case is a breach of contract claim that is based on the Delaware Buyer Protection Act, 6 *Del. C.* §2572. In Delaware, "a seller transferring residential real property shall disclose, in writing, to the buyer all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of the final settlement."[1] It is important to note that oral disclosures, while undoubtedly helpful, do not relieve the seller of residential real estate from their statutory duty to disclose all known material defects to the buyer in writing.[2] Moreover, the seller has a continuing duty to update the disclosure form to reflect any material changes up to the date of final settlement.[3] The required seller's disclosure is intended to be a good faith effort by the seller to disclose known defects and is not a substitute for warranties or inspections.[4] This requirement was further intended to eliminate the doctrine of "caveat emptor," or "let the buyer beware" from resident real estate sales in Delaware.[5] Once the seller's disclosure form is signed by both the seller and buyer the form becomes part of the residential real estate sale contract.[6] As such, a seller's failure to disclose any known material defects qualifies as a breach of the real estate contract by the seller.[7]

---

[1] 6 *Del.C.* §2572(a)).
[2] *Shaun D. McCoy v. William Dana Cox and Joanna L. Cox,* 2007 WL 1677536, *4 (Del. Super., June 4, 2007).
[3] 6 *Del. C.* §2572(b).
[4] 6 *Del C.* §2574.
[5] *Michael Iacono v. Rosemary Barici, et al.,* 2006 WL 3844298, at *4 (Del. Super., Dec 29, 2006).
[6] *McCoy v. Cox*, 2007 WL 1677536 (Del. Super., June 4, 2007).
[7] *Id.*

In a civil action for breach of contract, the burden of proof is on the plaintiff to prove the claim by a preponderance of the evidence.[8] To prove a claim for breach of contract the plaintiff must establish: (1) the existence of a contract; (2) that the defendant breached an obligation imposed by the contract; and (3) resulting damages to the plaintiff. As a default rule, damages are based on the reasonable expectation of the parties at the time they entered their contract. Expectation damages are measured by the amount of money that would place the non-breaching party in the same position as if the breaching party had fully performed the contract.[9] Moreover, a party has a duty to mitigate his/her damages.[10]

The dispute between the parties in this case is an allegation that the Sellers were aware of certain material defects in the property and those material defects were not disclosed to the Buyers on the SD. The Buyers allege that the following defects were not disclosed by the Sellers: a faulty roof which has created numerous water penetration issues involving the drywall, ceilings and flooring; electrical issues; missing or improperly installed floor joists that make the floors feel bouncy and creaky; intake and exhaust venting issues related to the HVAC unit; improper electrical wiring installation above the dining room; improper draining issues related to the sliding glass door in the basement; improperly installed soffits in the garage;

---

[8] *Id.*

[9] *Richard G. Frunzi v. Paoli Services, Inc.*, 2012 WL2691164 (Del. Super. 2012).

[10] *John Petroleum, Inc. v. Charles G. Parks, Jr.,* 2010 WL 3103391 (Del. Super. 2010).

4

an improper drain pipe installed by an outside faucet; and shifting and noisy walls. No mention of any problems with any of these areas of the property is contained in the SD.[11]

I first turn to the allegations relating to the roof. There is no question that there are major issues with the roof. The homeowner's warranty that came with the house was eventually transferred to the Mullins. The Mullins have been engaged in active proceedings with the builder of the home, K. Hov. The Mullins have made a claim under the homeowner's warranty and those claims, including the claims relating to the roof, have gone to arbitration. An arbitrator has found that the roof has issues that must be addressed by the builder and are covered by the warranty.[12] The question in this case is not whether there are defects in the roof, but whether the defects were known to the sellers prior to the settlement and not disclosed on the SD.

In analyzing this issue, I start from the standard pattern civil jury instruction on weighing conflicting testimony. The instruction provides that if the trier of fact finds testimony to be contradictory then the fact finder should try to reconcile it, if reasonably possible, to make one harmonious story of it all. But if this cannot be done then the trier of fact must accept the testimony that is most believable and disregard any testimony this is not believable. There is no way for me to harmonize

---

[11] The only disclosure in the SD was the Defendants' answer to question 81. The Defendants answered yes to the question of whether there had been any repairs or other attempts to control any water or dampness problems within the basement or crawlspace. In explaining their answer to this question, the Defendants wrote that "We had a frozen pipe on the outside of the house and there was slight water leak. We fixed it and added a shut off valve."

[12] This Court has previously ruled that Plaintiffs may not recover any items of damage that have been awarded to the Plaintiffs by the arbitrator. *Mullin v. Ascetta*, C.A. No.: N18C-11078 FJJ, at 5-6 9Del. Super. February 3, 2021).

all the evidence. The evidence on the Sellers' knowledge of the defect is clearly conflicting.

The Sellers testified that they were not aware of any problems with the roof and, in fact according to them, that they had never been in the attic prior to settlement. Both testified that no one was ever on the roof to do repairs while they owned the property and that there were never any water stains on the property. According to the Sellers, the only painting done inside the house was done by them and for cosmetic reasons. The Sellers primarily point to the home inspection done at the request of the Buyers pre-settlement, which indicated that there was no evidence of any issues with the roof or water in the attic. They also point to the fact that a major snowstorm occurred after settlement creating the first appearance of water stains. According to the Defendants, this major snowstorm caused snow and water infiltration in several homes in the neighborhood and is responsible for any water leaks and resulting damage. They also point to the work repair invoices from K. Hov which show no complaints relating to the roof and no complaints at all post one year after their settlement with K. Hov.

Plaintiffs' evidence on the roof issue comes from several sources. Two neighbors, John Rafalko ("Rafalko") and Neal Brinkerhoff ("Brinkerhoff"), testified that they were told that that the Defendants were moving from the property because Mrs. Ascetta did not want Mr. Ascetta climbing into the attic to clear snow from it. Rafalko testified that the Ascettas' son told him that they had to move because her

6

mother did not want the father climbing into the attic to clear snow. This was memorialized in a text message sent by Rafalko a few months after settlement of the property between the parties. Brinkerhoff testified that he saw workmen on the roof of the property while the Ascettas owned it (this was also confirmed by another neighbor Monica Matthews) even though the Ascettas both testified that there was never any problem with the roof and that no one was ever on the roof. Brinkerhoff also testified that Mr. Ascetta told him that snow was getting into the attic apparently through the ridge vent. Brinkerhoff testified that Ascetta also told him that he noticed a wet spot on the second floor ceiling. This testimony is consistent with the testimony of Mrs. Mullin that she found two cans of open Kilz in the basement with the rest of the paint cans that were left by the Ascettas. Kilz is a product that is used to remove stains from walls and ceilings. The existence of this product in the basement is inconsistent with the testimony of both Defendants that there were never water stains on the walls or ceilings in their home during their ownership and that they never had to address any such stains. Defendants had no reasonable explanation for the existence of the Kilz product with the rest of the paint cans other than an argument that the Kilz product must have been left by the builder. I reject this argument as not being credible.

Finally, the Mullins testified as to a meeting between them and the Ascettas that took place on the front porch of the property on April 18, 2018. The Defendants appeared at the property unannounced and inquired as to what issues the Buyers

7

were concerned about. The Mullins testified that during this conversation Mr. Ascetta talked about the snow in the attic at which point Mrs. Ascetta told her husband to keep quiet.[13]

This fact finder concludes that the Plaintiffs' evidence on the Defendants' knowledge of the roof defect pre-settlement is the more credible version of the facts. Putting all else aside,[14] there is simply no reasonable explanation for the testimony of Rafalko and Brinkerhoff (along with the Kilz cans) other than the testimony is truthful and credible. As for the Defendants' evidence, I find the testimony of the home inspector, Garr Owens, not to be credible. From my vantage point his inspection was at best incomplete and shotty and casts serious doubt on his credibility. The lack of complaints about the roof in the K. Hov records is explained in my mind by the fact that there was a steady stream of complaints within the first year and none after that. This suggests to me that the Plaintiffs thought that the warranty claims were covered only in the first year after settlement and they stopped making complaints. I find that the Plaintiffs have proven by a preponderance of the evidence that there was a material defect in the roof which should have been disclosed on the SD by the Sellers and it was not disclosed.

---

[13] The Defendants denied that this conversation took place, which I reject. Plaintiffs point to a letter sent to them by Defendants offering to settle for $2,000.00 as proof of their claims. I have not considered this offer of settlement as it is not admissible under Delaware Rules of Evidence 407.

[14] Testimony was also presented from a number of sources that the color of the plywood under the roof was such that the dampness had been present well before the snowstorm.

Plaintiffs also allege that the Defendants failed to disclose that there were material defects in the floors which caused them to be bumpy, squeaky and caused the carpet over the floors to be bumpy. According to the structural engineer, Steve Lehr, this condition was the result of the screws or nails not being inserted into the joist correctly. Lehr testified that a homeowner would not necessarily be aware that the noise in the floors was because of a defect or what that defect was. While Defendants may or may not have known what the defect was that caused the floors to squeak, the excessive and continued squeaking of the floors was well known to the sellers. This issue should have been disclosed on the SD.[15] The better weight of the evidence falls on the conclusion that the Sellers were aware of the continued squeakiness of the floors.

Plaintiffs allege that Defendants knew there were issues with the walls (particularly the outside wall in the master bedroom). No definite opinion has been offered by the Plaintiffs as to the cause of this issue other than speculation. Stephen Lehr suggested further analysis but that has not been done. Mrs. Ascetta testified that when they first moved in she slept in other areas of the house because of the noise that occurred when it was windy outside. She testified that she reported this to the builder and was told it was normal. She took no further action and returned to sleeping in her bedroom. On this record, there is simply not sufficient evidence

---

[15] Defendants argue that Mrs. Mullin was aware of certain problems with the house as a result of her visual inspection of the property prior to settlement and that this knowledge absolves the Defendants duty of disclosure –this is simply not the law. *Ma v. Pineault*, 2012 WL 1416089 (Del.Ct.Cm.Pl., 2012).

that as of the time the house was listed through settlement of the property that there was a material defect of which the Sellers were aware that required disclosure on the SD.

Plaintiffs next allege that Defendants failed to disclose that the intake and exhaust venting was a defect that it should have disclosed. Apparently the placement of this venting is contrary to code. However, there is no evidence that the Defendants knew that there was anything wrong with the placement of this venting or that it was not operating properly. I therefore find that this "defect" was not one that was required to be disclosed by the Defendants because, as homeowners, they had no knowledge it was a defect or that it was not working properly.

Plaintiffs maintain that the Defendants failed to disclose the issues related to the electrical wiring taped to the ceiling light fixture bracket. There is no testimony that the Defendants knew this was a defective condition or that the light was not working properly. In fact, Steve Lehr, Plaintiff's structural engineer, testified that a layperson would not recognize this as a defect. As the defendants did not know of the defect and the light worked, there was no duty to disclose this item on the SD.

I reach the same conclusion as to the plumbing drain that was improperly added to the drain line cleanout. Even if this was added after the house was purchased by the Buyers, there is simply no evidence that this issue caused any problem after whatever repair work that was undertaken was completed, nor is there

10

any evidence that it was a material defect. On these facts, there is no duty of disclosure.[16]

Plaintiffs complain about the placement of the soffits in the basement ceiling. Even had there been a prior issue that required the placement of these soffits post purchase by the Buyers there is no evidence that there was any continuing problem from this issue after the soffits were installed, and there is no evidence that it was a material defect. Again, on these facts there was no duty of disclosure.[17]

Similarly, there is no evidence that the Plaintiffs were aware that roof truss bracing had been removed nor is there any evidence that the Defendants were aware of the issues related to the uninsulated, flexible ducting in the attic for the bathroom fan venting. There is also no evidence that the Defendants were aware that there was anything wrong with the bathroom tub. As to each of these allegations that they are material defects and that the Defendants failed to disclose them, I find that the Plaintiffs have not met their burden of proof on these items as proof is absent that the Defendants knew of any issues with these items.

Plaintiffs claim that the Defendants failed to disclose that there was a leak problem at the sliding glass door in the basement. The testimony revealed that the sliders leaked once because Defendants failed to clean out the slider. Once the

---

[16] *McCoy v. Cox*, 207 WL 1677536 (Del. Super., 2007).

[17] *Id.* Stephen Lehr offered testimony that the placements of the soffits and visible water stains on the ceiling in the front of the basement could have been due to a freezing pipe of an outside faucet. This would also explain the existence of the plumbing drain as described above and is consistent with item 81 on the SD. Accepting that this was a prior issue and the soffits were installed to fix the problem, there is no evidence of any ongoing problem after the installation of the soffits which would require disclosure.

Defendants began performing regular maintenance on the slider by cleaning it out the leaks stopped. Given this history, there was no duty of Defendants to report this on the SD.

Plaintiffs claim that the Defendants failed to disclose a defect in the electrical system of the house as the electrical circuit tripped on occasion. The fact that installation of a device in the breaker box would have prevented that circuit from breaking does not establish liability because there is no evidence that this device was installed by Plaintiffs nor that there were ongoing problems with the electrical system of which they were aware that required disclosure.

In summary, I find that the Defendants should have disclosed the issue with the roof and the creaky floors. As to all the other alleged defects that Plaintiffs say should have been disclosed, I find that the Plaintiffs have not met their burden of proof.

Having found that the Sellers failed to disclose two material defects I now turn to the question of damages flowing from this failure to disclose. Each of the material defects not disclosed were part of the arbitration proceedings between the Buyers and K. Hov. As to each of these items the Arbitrator determined that they were covered claims under the homeowner's warranty.[18] This Court has previously ruled in this case that the Plaintiffs could not present claims for damages that were

---

[18] Even though I find no liability for a number of defects alleged, I would note the homeowner's warranty arbitration decision found the following to be covered by the warranty: missing floor joists – 1st floor; floors not installed correctly; roof leaks; HVAC exhaust pipes; main LVL support in basement; headed off joists above basement utility room; ceiling bracket and dip in foyer wall as you walk into basement.

covered by the Homeowner's Warranty Program.[19]  The question is whether Plaintiffs have suffered damage because of the two nondisclosed material defects that go beyond that covered by the homeowner's warranty.

Plaintiffs have presented evidence of two separate types of damages:  costs of repair and diminution in value of their home because of Defendants' breach.  I first turn to the costs of repair analysis.

The costs of repair analysis comes from the reports and testimony of Stephen Lehr and Raymond Strauss.  Lehr is a structural engineer.  In his report and testimony Lehr laid out those items that he found to be defective in the house.  While he performed this task, Lehr failed to render an opinion on what needed to be done to repair the defects that he found.

Strauss is a home builder.  Strauss was given a list by the plaintiffs of the items that needed repaired and/or replaced and asked to give a cost estimate to do the repair and/or replacement for the items.  Strauss gave such a list outlining 15 items by number.  In the Strauss list items 1, 6, 7, 8, 10, 11, 12, 13 and 14 do not relate to issues where a defect was required to be disclosed and as such Plaintiffs are not entitled to damages for these items.  Item 2 (remove all linoleum and carpeting, fasten all subflooring to the floors below the floor joists below) and item 3 (replace carpet and linoleum with similar builder grade flooring that was removed) are two

---

[19] *Mullins v. Ascettas*, C.A. No.: N18C-11078 FJJ, at 5-6 9Del. Super. February 3, 2021).

items that are clearly covered under the homeowner's warranty plan and therefore not the responsibility of the Defendants. Item 4 (replace all drywall in the whole house), item 5 (paint all walls with a basic flat white paint); and item 9 (replace 54 electrical outlets) are problematic. While some of the work in each of these categories may be required due to damage from the two undisclosed defects (It is clear that the builder will not fix this based on Defendant's Exhibit 4), the problem from my standpoint is that Lehr never indicated that all this work needed to be done. Indeed, at least as to one of the items (item 9), he had a contrary view.

To sustain their burden on damages, the Plaintiffs must present evidence that as a result of a Defendants' breach certain damages were incurred. As to the Strauss list there is no testimony that <u>all</u> the work listed in these three items was reasonable, necessary and related to the breach. Expert testimony is required for this and it is lacking.[20] On this basis I find that the Plaintiffs, except for the one item discussed below, have not proven a costs of repair case.

A second claim for damages was premised on a claim that as a result of the defects in the house Plaintiffs have suffered a diminution in the value of their home. The basis of this proposition was the testimony of Barbara Walker. Ms. Walker is a real estate agent and was the agent who handled the purchase of the house on behalf of the Mullins. She testified that if the house was to be listed with all the defects in the house, which would have to be disclosed on the SD, the list price would be

---

[20] *Town of Townsend v. Grassbusters*, 2019 WL 3493904 (Del. Super., 2019).

$200,000 less than if the house had no defects. Walker also testified that to rent a similar house would cost between $1,700.00 and $1,900.00 a month. This testimony was presented to support a claim that if the house was to be repaired, the Plaintiffs would have to move out for 5 months while the work was being done and the cost of alternative housing. There was also testimony presented that the costs of movers to move the Plaintiffs into the rental and then back to the property after the repairs were complete would be $10,644.00.

I first turn to the claim for diminution in value. There are three problems with this testimony. First, the testimony offered by Walker focused on the listing price. There was no testimony offered by her about the difference in the sale price which would be the appropriate measure of damage.[21] Second, and more importantly, Walker's testimony was based on all the defects being claimed in this case. At no point was she asked to break out the diminution of value as to each of the alleged defects to the property. Moreover, her testimony appears not to consider the fact that some of the items were covered by the homeowner's warranty. Like the costs of repair claim, this claim is based on facts that either were not considered or not related to any action on the part of the Defendants. This is not the first situation where a Delaware Court has seen a plaintiff paint to broad of brush in its damages

---

[21] Defendants' challenge Walker's qualifications to offer an opinion about the decrease in the value of the home since she is not a licensed appraiser citing 24 Del. C. §4007(a). They argue that a real estate agent can only offer such an opinion if she has prepared a competitive market analysis, and that Walker did not that in this case. Given my conclusion, the Court does not need to address this issue.

claim only to be left with no claim at all.[22]  As in *Ravenswood,* any award by this Court for diminution in value based only on those items for which the Defendants are responsible would be speculation and as such improper for this Court to do.  Even had Walker's testimony had proper foundational support, this fact finder has serious doubts about the credibility of her testimony as to the value of the home and does not accept it.[23]

The last part of Walker's testimony (and Mrs. Mullin and Mr. Strauss) relates to the costs the Plaintiffs' will incur in having to move out of their house while the work is completed.  The testimony presented is that it would take 5 months to do the work and that the Plaintiffs would have to move out of the house.  The Defendants dispute that it is necessary for the Plaintiffs to move out during the repair period. Having considered all the evidence, it is my view that the Plaintiffs will have to move out of their house while this work is being done.  Since the homeowner's warranty arbitration decision indicated that the costs associated with this item is not covered under the warranty, it is this Court's view that this item of damages is related to a material defect that was not disclosed and not covered by the homeowner's warranty.  This Court is of the view that this 5 month period would be appropriate for the items for which the Defendants are responsible.  Therefore, this Court awards

---

[22] *Ravenswood Investment Company LP v. Estate of William Bassett et. al.*, 2018 WL 1410860, *20 (Del. Ct. Ch., 2019).

[23] At Exhibit 18 there is a list of itemized damages.  The Court finds that those items totaling $6,352.31 are not recoverable as they either relate to the costs of litigation, cover items that should be covered by the homeowner's warranty or are not a result of defect for which the Defendants are responsible.

16

$8,500.00 for alternative housing costs and $10,644.00 for moving expenses associated with same.

Wherefore the Court finds in favor of the Plaintiffs against the Defendants in the amount of $19,144.00.

The Court understands that the contract between the parties contained a fee shifting provision. Any application for attorneys' fees should be filed within 30 days of the date of this decision and any response thereto should be filed 30 days after the application for fees are filed.

**IT IS SO ORDERED**.

/s/ *Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:    File&ServeXpress

17